UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20633-CR-MARTINEZ/GOODMAN

UNITED STATES OF AMERICA

v.

ROBERTO GONZALEZ ESCOBAR,

    Defendant.
_____/

## REPORT AND RECOMMENDATIONS CONCERNING DEFENDANT ROBERTO GONZALEZ ESCOBAR'S MOTION TO DETERMINE HIS COMPETENCY

Defendant Roberto Gonzalez Escobar ("Defendant") filed an Unopposed Motion to Determine the Competency of Defendant. [ECF No. 17]. United States District Judge Jose E. Martinez referred the Motion to the Undersigned. [ECF No. 18]. The Undersigned required Defendant to submit to psychological examination pursuant to 18 U.S.C. §§ 4241 and 4247. [ECF No. 36].

Defendant and the Government each conducted their own competency evaluation. Defendant's expert, Merry Sue Haber, concluded that Defendant was incompetent to proceed to trial and the Government's expert, Michael Brannon, concluded that Defendant was competent to proceed to trial. [ECF Nos. 40; 43].

The Undersigned held a competency hearing, pursuant to § 4241(c). At the hearing, Defendant's probation officer testified and then both experts, Ms. Haber and

1

Mr. Brannon, testified. The Undersigned authorized the parties to each submit a memorandum of law, which they did. [ECF Nos. 44; 48; 49].

Section 4241(d) provides that "[i]f, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility."

After having held a hearing, the Undersigned **respectfully recommends** that the District Court find that Defendant is competent to proceed to trial for the reasons detailed below.

To determine a defendant's competency to stand trial, the court must determine "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 80 S. Ct. 789 (1960). "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995).

At the beginning of the hearing, Defendant's Probation Officer, John Karles, testified that Defendant was fully compliant, had not violated the terms of his probation, understood his probation requirements, was aware that he has a criminal case pending, and properly left a voicemail to report to the probation officer. Mr. Karles also testified that, as far as he could tell, Defendant did not have issues following instructions.

Although Mr. Karles' testimony did not demonstrate, or even suggest, that Defendant was incompetent, the competency determination is more dependent upon the two experts' reports and testimony. After reading the reports and hearing the testimony, the Undersigned is persuaded by the Government's expert, Mr. Brannon, who found that Defendant is competent.

Both experts agree that Defendant has neurocognitive damage -- specifically, dementia. The Government's expert, Mr. Brannon, examined Defendant with the assistance of an interpreter and found that he is competent to stand trial. In support of his determination, Mr. Brannon testified that Defendant's neurocognitive damage is *mild*. He stated that Defendant was exhibiting *slight* memory impairment. Mr. Brannon testified that there was mild impairment to his immediate memory, which concerns the ability to remember things after a very brief period of time.

Mr. Brannon found that Defendant's responses were rational, relevant, non-rambling, and communicative. He explained that it was difficult to determine whether

3

Defendant had a significant delay when providing his answers because he was conducting the evaluation through an interpreter. Mr. Brannon found Defendant adequately responsive to all of his questions, and he explained that Defendant did not display any issues with understanding or responding to the questions. Mr. Brannon described Defendant's speech as expressive and receptive.

Mr. Brannon noted that Defendant exhibited signs of depression in the screening tests but did not appear openly depressed. Defendant did not exhibit signs of anxiety but Mr. Brannon explained that the lack of evidence of anxiety might be a result of Defendant's medications.

Additionally, Mr. Brannon testified that Defendant stated he is on medications, specified which medications he is taking, and explained that he takes them on a daily basis. He also informed Mr. Brannon that he attends group therapy every Thursday night.

Mr. Brannon asked Defendant to explain his charges. Although Defendant could not name his specific charges, he was able to discuss what he allegedly did wrong. Mr. Brannon found that Defendant provided good descriptions and even used one of the words utilized in the charges: "fraud." Mr. Brannon noted that Defendant recalled this term approximately thirty minutes after he initially asked the question.

Also, Mr. Brannon found that Defendant's responses to questions concerning the different roles of the individuals in the courtroom and the significance of a plea demonstrate his comprehension.

In addition, Mr. Brannon tested Defendant, when asking Defendant about the charges, by adding a completely unrelated criminal charge, to evaluate Defendant's reaction. Mr. Brannon stated that Defendant immediately reacted to the false charge. Mr. Brannon explained that he was testing whether Defendant would simply be compliant and/or whether he could be convinced that the additional charge applied to him. Defendant was neither compliant nor convinced of the false charge.

At the end of his testimony, Mr. Brannon stated that he did not take issue with the methods used by Ms. Haber but noted that he expected Defendant to be significantly more impaired having read her report before examining Defendant.

Ms. Haber, who found Defendant incompetent to stand trial, evaluated Defendant differently. Ultimately, however, I found Mr. Brannon's testimony more persuasive.

Ms. Haber testified that Defendant has difficult performing activities of daily living, has anxiety, and that the anxiety worsens his memory and impacts his performance. Ms. Haber testified that she spoke with Defendant's wife, who informed Ms. Haber that she needs to give Defendant his medications because he forgets to take them. Ms. Haber also stated that Defendant did not know the names of his medications.

Ms. Haber also testified that Defendant's memory was impaired, particularly his immediate memory. However, she then testified that it was difficult to assess Defendant's memory because he was not very communicative and that she had to ask him specific questions to get answers.

Additionally, Ms. Haber testified that Defendant can follow directions. She explained that this ability did not necessarily mean that Defendant could make his own plans, make decisions, or that he did not get confused.

Ms. Haber testified that she asked Defendant about his pending charges and that he responded that the charges were for "lying to questions, but I never answered questions." Ms. Haber asked whether he knew if his charge was a felony and if he knew the difference between a felony and a misdemeanor. Ms. Haber reported that Defendant answered that his was a felony charge and that a felony is "when you kill someone." Ms. Haber did not ask any further questions about the pending charges.

Ms. Haber did ask about the possible consequences Defendant might face if convicted. Defendant told Ms. Haber that he might lose his citizenship, but did not know what else could happen. Ms. Haber explained that he did not mention incarceration and that she did not ask him about incarceration. They also did not discuss what it meant to pled guilty.

Ms. Haber asked Defendant who the most important person in the courtroom was and Defendant indicated the judge. Also, Defendant explained that his defense

6

counsel was there to help him. Ms. Haber did not ask Defendant about the prosecutor's role.

Ms. Haber asked if he had previously been arrested. Defendant said yes and explained that he was arrested in 2014 for touching his niece and that he pled guilty.

When asked whether she thought Defendant would be able to testify or assist the attorney, she answered that Defendant would not be able to and explained that he has paucity of thought and memory. She elaborated that Defendant has memory gaps. However, Ms. Haber then stated that it would depend on how closely and carefully his attorney questioned him.

Ultimately, although Ms. Haber testified that Defendant has memory issues, Defendant has been able to successfully communicate to his counsel his fundamental defense. Ms. Haber testified that Defendant would not be able to assist with his defense. However, he seems capable of assisting so long as his counsel asks him specific and carefully crafted questions. In fact, Defendant recognizes that his charges relate to having allegedly made false statements on an immigration form. Additionally, Defendant has independently provided his defense -- that he never answered the questions himself.

Accordingly, based on the reports and the testimony, the Undersigned finds that Defendant is mentally competent to the extent that he is able to understand the nature and consequences of the proceedings against him and is able to assist properly in his

defense. The Undersigned therefore **respectfully recommends** that Judge Martinez find Defendant competent to stand trial.

**OBJECTIONS**

The parties will have until March 10, 2017[1] to file written objections, if any, with the United States District Judge. Each party may file a response to the other party's objection by March 13, 2017. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on March 9, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All counsel of record

---

[1] Given the upcoming trial, I am shortening the deadlines for objections and responses.